[ * 181 ]

\* BENJAMIN BANGS *versus* JONATHAN SNOW & AL.

*Practice.*—A defendant being an officer, who pleads the general issue, and files a brief statement in defence, has the right of opening and closing. *Qu.* Such statement must specify *substantially* the facts intended to be proved, and in such *form* as to enable the adverse party to meet them at the trial The records of a parish as to grants of money may be contradicted, and falsified by parole evidence. Parishes have no authority to grant moneys, except for settling ministers and building houses of public worship, and for purposes necessarily connected with those objects.

THIS was an action of trespass for taking divers goods, &c., specified in the declaration, on the 5th day of July, 1803.

The action came into this Court by appeal from the judgment of the Court of Common Pleas. In that court, the defendants pleaded as follows, *viz.* :—

And the defendants come into court, and defend, when, &c., and alleging that they are now, and, at the time when the trespass in the plaintiff's writ and declaration is alleged to have been committed, were *parish assessors*, duly and legally appointed and qualified to act in said office, and that the supposed trespass aforesaid respects the conduct and doings of them, the defendants, in their said office, as assessors aforesaid, and that the said defendants, by leave of the court, and by direction of court, now here in court file, in said cause, a brief statement of the special matter of their defence, for plea, agreeable to the statute in such cases made and provided, entitled, "An act for giving liberty to plead the general issue, and give the special matter in evidence in certain cases," passed the twenty-fifth day of February, A. D., one thousand seven hundred and ninety-three, (*stat.* 1792, *c.* 41,) say they are not guilty in manner and form as the plaintiff has declared against them in his said writ and declaration, and of this they put themselves on the country.

The plaintiff joined the issue, thus, *viz.*,

And the said *Benjamin Bangs*, protesting that the defendants were not parish officers, nor assessors, nor acting in an official capacity at the time they committed the trespass aforesaid, and protesting that the said *Bangs* is not an inhabitant in the town or parish of *Brewster*, as alleged by the defendants in their plea and statement attending the same, and reserving to himself equal [ * 182 ] * liberty to give special matter in evidence as the defendants claim, for replication likewise puts himself on the country.

*This* Court directed the pleadings to be struck out, and a *proper* general issue to be entered. The counsel for the parties accordingly had the same entered as follows, *viz.*, And now (the parties in this action by agreement waiving the pleadings made at the Court of Common Pleas) the said defendants come and defend the force and injury when, &c., and filing in this case the same brief statement that they did at the Court of Common Pleas, agreeable to the statute in such case made and provided, for plea say they are not guilty in manner and form as the plaintiff has declared against them in his said writ and declaration, and thereof put themselves on the country—and the plaintiff likewise.

The brief statement filed in the case was as follows, *viz.*, The

said defendants say they now are, and at the time said supposed trespass is alleged to have been committed in the writ and declaration of the said plaintiff, they were, the parish assessors, duly and legally appointed and qualified to act in their said office, in and for the *Congregational parish in the town of Brewster;* and that they, on the 17th day of March, in the year 1803, made a tax in a legal and proper manner, by and in which tax the plaintiff was duly assessed the sum of 22 dollars and 44 cents, as in and by said tax is expressed; and afterwards, viz., on the said 17th day of March, the said defendants made and executed legally their warrant directed to *David Foster*, then and now a collector of taxes in said parish, then duly qualified to execute said warrant; that the plaintiff was one of the inhabitants of said parish, and assessed in said tax as aforesaid, and that the plaintiff refused to pay his said tax; and to pay and discharge the same, the said *Foster*, by * virtue of said warrant, took and sold, in a legal man- [ * 183 ] ner, the said articles mentioned in the writ and declaration of the plaintiff, and from that sale paid and discharged said tax.

A question was made who was to open and close.

THACHER, J., thought it was the right of the counsel for the defendants; the plaintiff had nothing to open; the act of taking is ac knowledged, and the defendants, in effect, justify.

SEDGWICK, J., said he was of the same opinion; the present mode of proceeding is, by the statute, a substitute for special pleading; the defendants take the affirmative, and acknowledge every thing which the plaintiff has to prove.

STRONG, J., said he was of a different opinion, and that, according to his present recollection, the practice had uniformly been different.

The counsel for the defendants first offered in evidence a warrant, dated 28th Feb. 1803, for calling a meeting of *the north parish in the town of Harwich*, which *parish is now lying in the towns of Harwich and Brewster*, directed to *David Foster, collector*, and signed by the assessors, (the defendants,) to be holden on the *8th day of March*, then next.

This was objected to, because it purported to be a warrant for calling a meeting of a different corporation from the corporation mentioned in the brief statement of facts to be given in evidence.

*B. Whitman*, for the defendants, contended that the same precision and strictness were not required in the present case, as in special pleadings; it was sufficient if the parish mentioned in the brief statement, and that described in the warrant, could, by any intendment, be considered as the same. And he insisted that, in the

present case, they might and ought to be intended to be the same.

[ * 184 ]     * By the act passed Feb. 19, 1803, (*stat.* 1802, *c.* 76,) dividing the town of *Harwich* into two towns, and erecting the northerly part thereof into a town by the name of *Brewster*, it is clear that there are and had been two parishes in *Harwich*, one of which was called the *north parish*, as in the warrant: it is true the warrant goes further, and describes it as *now* lying in the towns of *Harwich* and *Brewster*, which is perhaps strictly true ; because a small part of what was originally the north parish is situated within the *now* town of *Harwich*. The brief statement describes the parish as being in the town of *Brewster*, which is *substantially* true, as nearly the whole of it is in fact within the town of *Brewster :* the object of the brief statement was to give notice of the *substance* of the defence ; this it had certainly done, as it was impossible that the plaintiff should be misled by it ; nor did his counsel at the Court of Common Pleas, where the cause was tried, make the objection which is now made, or contend that all the notice which the law supposes or requires had not been given.

The *Attorney-General*, (*Sullivan*,) in reply, said that he thought the statute which authorized the giving in evidence special matter, under the general issue, ought to be construed liberally ; but that to extend it to a case like the one now before the Court, would tend to deceive and intrap the plaintiff. It would, in effect, permit defendants to give notice that they should justify as assessors of *A*, and to give evidence of acts done by them as assessors of *B*, which the Court, he trusted, never would sanction by their decision in the present case.

THACHER, J., was for admitting the warrant in evidence, because he thought that, from what appeared in the present case, it was evident the parish was known by the different names mentioned in the warrant and in the brief statement, and might

[ * 185 ]. * fairly be intended to be the same, and that the plaintiff knew the fact to be so. The statute for giving notice of the defence intended under the general issue, requires nothing more than the *substance* of the defence, and *that* stated intelligibly, as is evident from the words " filing a brief statement of the special matter of defence."

SEDGWICK, J., said he was for construing the statute in the most liberal manner, because the intention of the legislature was to relieve from the trouble and danger of special pleading; but to extend it to a case like the present, would be perverting it to purposes which might be more mischievous than those things were which it was intended to remedy. In this case, the notice of particulars to be

given in evidence, and the evidence offered, are inconsistent. The notice is, that the defendants were acting as assessors of the *Congregational parish in the town of Brewster.* The evidence offered is of *the north parish in the town of Harwich,* which *parish is now lying within the towns of Harwich and Brewster.* Whichever part is taken of the description given in the warrant, it is different from, and inconsistent with, the description given in the brief statement. If the latitude contended for is admitted, how can the plaintiff come prepared to meet the evidence?

STRONG, J., said he thought the Court ought to give their opinion on general principles, upon principles which would bear to be applied to all similar cases, and not whether in this particular case the plaintiff had had actual notice. He then stated the case very briefly, and said that he did not consider such a variance as would be fatal in pleadings, would be fatal in this case; but here one is called a parish in one town, the other a parish in another town, or in two towns, as is obvious upon inspection. How are the Court to intend that things so differently described are not, in fact, different, but * one and the same? The Court, or the plaintiff, [ * **186** ] might as well intend that *John* is *James.*

The defendants had leave to amend the brief statement on the common rule.

The warrant was then objected to on two grounds—*First,* that it had not been proved that the persons under whose authority it purported to have been issued, were assessors; and *secondly,* that it did not appear, by the return of the collector, endorsed on the warrant, that the qualified voters had been notified seven days previous to the time set in the warrant for holding the meeting, as the statute relative to the subject requires.

The return of the collector was as follows, viz., "*Brewster,* March 8, 1803.—Pursuant to the within warrant, I have notified the inhabitants of the north parish, late of *Harwich,* qualified as therein expressed, to meet at the time and place, and for the purposes within mentioned. *D. F.,* Collector."

The Court said that, taking the return of the collector strictly, it did not appear that the inhabitants had been notified until the very day on which the meeting was holden; but, as it was usual for constables and collectors to return their warrants in this way, dating the return on the day of holding the meeting, they would admit the warrant in evidence, for the purpose of showing who was the *parish clerk.*

The *parish clerk,* being admitted and sworn, produced a book, which, he testified, contained the records of the north parish in *Harwich,* and by which it appeared that the defendants were chosen

assessors at the meeting holden March 8, 1803, and that there was then granted *the sum of* $1200 *for past charges of the parish*, to be assessed on the inhabitants. The other particulars contained in the brief statement were then proved; and here the counsel for the defendants rested their justification.

[ * 187 ] *E. Bangs* for the plaintiff. By the act passed Feb. 19, 1803, to divide the town of *Harwich*, and to incorporate the northerly part thereof into a separate town, by the name of *Brewster*, the town of *Brewster* is vested with all the powers and privileges, rights and immunities, and subject to all the duties, to which other towns are entitled and subjected by the constitution and laws of the commonwealth. By the *second section* of the act, the remonstrants to the act of incorporation who lived in the north parish had liberty to remain with their families and estates in the town of *Harwich*, upon the condition therein specified, viz., by leaving their names in the secretary's office, within two years from the date of the act of incorporation, certifying that such was their intention.

The plaintiff was one of the remonstrants; but whether so or not is perhaps immaterial in the present case, because it is contended, on his behalf, that, by the act of incorporation, (the act which divided *Harwich* into two towns,) all *parochial* distinctions, powers, privileges, &c., are annihilated and gone. The act operated a complete dissolution of the parishes into which the town of *Harwich* was theretofore divided. There is no instance, and never has been, where a *town* acted, or has been considered as acting, as a *parish* merely. A *parish* has not all the powers of a *town*. It is a thing carved out of a town, and has existence for particular purposes, which are defined by statute. A town, as such, has all the powers which a parish has, and many others; but it does all corporate acts as a town, and cannot do a corporate act otherwise than as a town; and this is the general law, practice, and understanding of the legislature, as well as of the judicial courts, on the subject.

But admitting that the parish still exists, he contended that the grant of the money upon which the tax was made was [ * 188 ] illegal; that by far the greatest * part of the sum of $1200 dollars, which, in the vote, is expressed to be granted for parish charges, was, in fact, for expenses incurred in getting through the act of incorporation above mentioned; that the remonstrants, who, by the act, are exempted from any part of the expenses of the town of *Brewster*, were assessed in that tax, as well as the other inhabitants. Those expenses which had been incurred previous to the existence of *Brewster* as a town, and therefore could not be *town charges*, had *very conveniently* been considered as a *parish charge*, and had been assessed on all the inhabitants

of the north parish. And he moved to have the liberty of proving, by parole evidence, that the sum granted was for the purposes above stated.

The counsel for the defendants objected to this evidence, because it was contradicting the records of the parish, which, it was insisted, could not be contradicted or explained by parole evidence. The parish records say expressly that the money was granted for parish charges, and the plaintiff, one of the parishioners, ought not to be permitted to say it was not for legal parish charges. And he cited the case of the town of *Randolph* against the town of *Braintree*, at the last term of this Court in *Norfolk*, in which the Court excluded similar evidence.

The *Attorney-General*, in reply, said that it did not appear by the parish records for what specific purposes the moneys were granted, and therefore the plaintiff had a right to prove what were the real purposes, and in that way show that the moneys were not in fact granted for the purposes for which parishes are empowered to grant money ; that if the law were otherwise, it would be in the power of parishes to grant money for *any* purpose, and to *any* amount, even to the ruin of individuals, taking care only to enter in their records that the grant was for parish charges. And he said that * he was inclined to think, in a case like the present, the [ * **189** proof lay upon the defendants to show what were the purposes, what were the *past* charges of the parish, for which the moneys were granted. As to the case cited, the decision of the Court was, that the inhabitants of *Braintree* should not be permitted to contradict their own town records, which could not control or influence the present case.

The Court (*Strong, Sedgwick,* and *Thacher,* justices) were clear that the evidence was pertinent and proper ; that the presumption is in favor of corporations as well as individuals, that they do right until the contrary is shown. But unless evidence of the kind now offered be admitted to show that the parish has exceeded its powers, it will be impossible, perhaps, for the plaintiff, how much soever he may be injured, to obtain a remedy. They recollected the case cited, and said that it was decided as stated by the *Attorney-General.* The evidence was admitted.

And it was proved that a very considerable part of the 1200 dollars was granted for the purposes stated by the plaintiff's counsel.

Upon which, the Court called upon the counsel for the defendants to support, if he could, the legality of the tax upon the plaintiff.

*Whitman* relied upon the 15*th sect.* of the act passed Feb. 20, 1786, (*stat.* 1785, *c.* 50,) which authorizes assessors of parishes to

assess *all such rates and taxes* as shall be agreed upon and granted by their parish at a meeting, &c., and upon the 3*d sect.* of the act passed June 28, 1786, which authorizes parishes to grant and vote such sums of money as they shall judge necessary for the settlement, maintenance, and support of ministers or public teachers of religion, for the building or repairing of houses of public worship, [ * 190 ] *and all other necessary* *parish or precinct charges,* to be assessed on the polls and property within the same, &c.

But the Court were so clear that parishes had no powers except those given by the statutes, and that those extended only to the settlement of ministers, building houses of public worship, and the charges arising from, and necessarily connected with, those objects, and that this doctrine had been so uniformly holden in the judicial courts, they would not permit the counsel to proceed in his argument, saying it was like arguing against a first principle, and respecting which there had never been any doubt. They gave no opinion as to the operation of the act by which *Brewster* was incorporated into a town, as it respected the dissolution of the former parishes in *Harwich,* it not being necessary in deciding the case now before the Court; but on the ground of the illegality of the grant and tax, as before stated, they directed the jury to find a verdict for the plaintiff, which they did *instanter.* (*a*)

Damages 24 dollars.

(*a*) [*Stetson* vs. *Kempton,* 13 *Mass.* 272.—*Dillingham* vs. *Snow,* 5 *Mass.* 47.—*Libby* vs. *Burnham,* 15 *Mass.* 144.—ED.]